In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-174 CV


____________________



ROCKY SAVAGE AND ELENA HOPE SAVAGE, Appellants



V.



WOODROW W. DOYLE AND MARY ANN DOYLE, Appellees






On Appeal from the 1st District Court


Jasper County, Texas


Trial Cause No. 23,994






OPINION


 Rocky Savage and Elena Hope Savage appeal a judgment granting summary judgment
for the defendants, Woodrow W. Doyle and Mary Ann Doyle, in a dispute arising out of a
real estate transaction. We reverse the summary judgment in part and remand for further
proceedings consistent with this opinion. 

 On July 3, 2001, the Doyles and Rocky Savage entered into a contract for deed in
which Savage agreed to pay $38,000 for the property. The final payment of $28,000 was due
October 10, 2001. The contract required the Doyles to keep the property insured. According
to Rocky Savage's affidavit, the house sustained water damage from a water heater
malfunction about September 1, 2001. Rocky Savage reported the damage to Woodrow
Doyle and asked Doyle to make a claim on his insurance. On October 16, 2001, Rocky
Savage executed a quitclaim deed that recited as consideration the cancellation of the
contract for deed. That same day, the Doyles conveyed the property to Elena I. Hope, who
is the same person as Elena Hope Savage. (1) The warranty deed from the Doyles to Hope
recited as consideration the sum of $28,000 paid by a third-party financier. Several months
later, the Savages sued the Doyles for breach of contract for failing to make a timely claim
upon the homeowner's policy. They subsequently amended their pleading to add statutory
claims for deceptive trade practices and fraud in a real estate transaction. See Tex. Bus. &
Com. Code Ann. §§ 17.46(b)(12), (24); 27.01 (Vernon 2002 & Supp. 2004). The Savages
allegedly discovered extensive previous water damage to the home while they were repairing
the damage from the leaking water heater. According to an affidavit filed by Rocky Savage,
no claim was made on the insurance until May 17, 2002, and then the claim was denied for
untimeliness. The Doyles moved for summary judgment "declaring that the Plaintiffs'
claims have been extinguished, released and satisfied" and for recovery of attorney fees. The
trial court granted the motion and entered a take-nothing judgment. 

 In their first issue, appellants contend a material fact issue precludes summary
judgment on the breach of contract claim. (2) The motion for summary judgment contends the
quitclaim deed executed by Rocky Savage canceled the contract for deed and operated to
release all claims arising out of the contract for deed. The Savages argue the quitclaim deed
is ambiguous with regard to whether Rocky Savage intended to release his right to seek to
enforce a breach of the contract by the appellees, and that his affidavit established an issue
for determination by the trier of fact. The appellees contend the quitclaim deed is clear on
its face that it cancelled the contract and released any and all claims and rights that Rocky
Savage had related to this property. (3) 

 Whether a contract is ambiguous is a question of law decided by examining the
contract as a whole in light of the circumstances present at its execution. Columbia Gas
Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996). An
unambiguous contract can be given a definite or certain meaning as a matter of law, but a
contract subject to more than one reasonable interpretation after applying the pertinent rules
of construction is ambiguous, and creates a fact issue on the parties' intent. Id. "Although
oral statements regarding the parties' intentions are inadmissible to vary or contradict the
terms of the agreement, the court may examine prior negotiations and all other relevant
incidents bearing on the intent of the parties." Baty v. ProTech Ins. Agency, 63 S.W.3d 841,
848 (Tex. App.--Houston [14th Dist.] 2001, pet. denied). Parol evidence is not admissible
for the purpose of creating an ambiguity, but if we determine a contract is ambiguous, parol
evidence is admissible to resolve the ambiguity. See National Union Fire Ins. Co. of
Pittsburgh, PA v. CBI Indus., Inc., 907 S.W.2d 517, 521 (Tex. 1995).

 A quitclaim deed, such as the instrument executed by Savage, does not establish title
but functions as a conveyance of whatever right, title, or interest the grantor possesses at the
time of execution. See Rogers v. Ricane Enters., 884 S.W.2d 763, 769 (Tex. 1994). In this
case, the appellees contend the quitclaim deed operated as a release of claims for breach of
contract, deceptive trade practices, and fraud in a real estate transaction. "In order to
effectively release a claim in Texas, the releasing instrument must 'mention' the claim to be
released. Even if the claims exist when the release is executed, any claims not clearly within
the subject matter of the release are not discharged." Victoria Bank & Trust Co. v. Brady,
811 S.W.2d 931, 938 (Tex. 1991). "Furthermore, general categorical release clauses are
narrowly construed." Id. The disputes over water damage and insurance claims are not
mentioned in the quitclaim deed, which expressly releases only Savage's claim to an interest
in the real property. 

 The Doyles argue the recited cancellation of the unrecorded contract for deed
precludes a later-filed suit for breach of contract because the contract has been cancelled or
repudiated. The recital in the quitclaim deed is evidence that the contract for deed has been
cancelled by the parties. It was executed contemporaneously with a warranty deed to Elena
Hope; thus, the circumstances surrounding the execution of the quitclaim deed also support
a conclusion that the parties cancelled the contract for deed to Rocky Savage. As the
movants for summary judgment, the appellees must establish as a matter of law that Rocky
Savage released his breach of contract claim when the parties cancelled the contract. We
agree with appellees that the quitclaim deed is not ambiguous, as it clearly states: "for and
in consideration of the sum of the cancellation of that one certain unrecorded Contract for
Deed . . . and other good and valuable consideration . . . ." When the contract was canceled
in consideration for the quitclaim deed, the parties' obligations under the contract ended. A
cancelled contract is ineffective as a legal obligation. See Ferguson v. DRG/Colony North,
Ltd., 764 S.W.2d 874, 887 (Tex. App.--Austin 1989, writ denied). The trial court correctly
granted summary judgment on plaintiff's breach of contract claim because the contract was
cancelled. Issue one is overruled.

 In their second issue, appellants contend the trial court erred in granting summary
judgment on their deceptive trade practices claim. (4) As with the breach of contract claim, the
appellees moved for summary judgment on the deceptive trade practices claim on the ground
that the quitclaim deed cancelled the contract for deed and released all of Rocky Savage's
claims against the Doyles. Appellees contend the Savages cannot assert "a claim for
ambiguity" in the quitclaim deed because they failed to comply with the pleading
requirements of Rule 94 of the Texas Rules of Civil Procedure. As plaintiffs, the Savages
were not required to assert affirmative defenses in their petition. We note that the quitclaim
deed and the circumstances surrounding its execution were presented to the trial court, as
required by the rule on summary judgment procedure. See Tex. R. Civ. P. 166a(c). The
quitclaim deed does not expressly release the tort claim, and the cancellation of the contract
for deed does not necessarily satisfy the tort claim. Rocky Savage's affidavit raises a fact
issue on the parties' intent in executing the document; therefore, the trial court erred in
granting summary judgment on that ground. 

 The motion for summary judgment also argued that the contract for deed contains an
"as is" provision that precludes "a claim for some minor property damage." (5) A valid "as is"
agreement prevents a buyer from holding a seller liable because the buyer has agreed to take
the full risk of determining the value of the purchase and has disclaimed reliance on whatever
representations the seller may have made. See Prudential Ins. Co. of Am. v. Jefferson
Assocs., Ltd., 896 S.W.2d 156, 161 (Tex. 1995). "[W]e do not suggest that an 'as is'
agreement can have this determinative effect in every circumstance. A buyer is not bound
by an agreement to purchase something 'as is' that he is induced to make because of a
fraudulent representation or concealment of information by the seller." Id. at 162. "A seller
cannot have it both ways: he cannot assure the buyer of the condition of a thing to obtain the
buyer's agreement to purchase 'as is', and then disavow the assurance which procured the
'as is' agreement." Id. Matters affecting the validity of a disclaimer of reliance include
whether the seller obstructed an inspection of the property, whether the clause is an important
part of the basis of the bargain or mere boiler-plate, and whether the transaction is between
sophisticated parties dealing at arm's length. Id. "The contract and the circumstances
surrounding its formation determine whether the disclaimer of reliance is binding." 
Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 179 (Tex. 1997). This record
reveals an arms' length transaction but provides no information about the relative
sophistication of the parties and the negotiation of the contract terms.

 In the context of a summary judgment, a document containing the buyer's disclaimer
of reliance conclusively negates the element of reliance. Procter v. RMC Capital Corp., 47
S.W.3d 828, 834 (Tex. App.--Beaumont 2001, no pet.). To avoid summary judgment,
therefore, the buyer "must present some summary judgment evidence that 'but for' the
representations of the seller regarding the condition of the subject of the contract, the buyer
would not have assented to the 'as is' clause in the sales' contract." Id. The summary
judgment response evidence on the representations regarding the condition of the property
must raise a fact issue on: (1) material representation; (2) falsity; (3) actual knowledge; (4)
intent to induce reliance; (5) reliance; and (6) injury. Id. at 834-35. In his affidavit, Rocky
Savage states that he did not look inside the walls, but that during his inspection of the
property he found some spare plywood in the garage and asked Woodrow Doyle why it was
there. According to Savage, "Mr. Doyle denied any problems." Savage also relates that
while cleaning the water damage from the hot water heater leak, he and Elena discovered
additional water damage that "would indicate that the home had been previously damaged
extensively." In reply, Woodrow Doyle provided an affidavit in which he states that the
water had been turned off for seven months before Savage took possession of the property,
and that he had no knowledge of any leak in the water heater. According to Doyle, he and
his son had repaired the roof on the house in July 2000, and "there may have been some
plywood" there. Doyle stated he "explained that to Mr. Savage before we entered into a
contract." Neither affidavit states the matter clearly, but all inferences must be resolved in
favor of the non-movant. It appears Savage discovered water damage inside the walls after
he executed the contract for deed. Woodrow Doyle admits he assisted his son in a repair to
the home in July 2000, and asserts that he reported the roof repair to Savage, but Savage
claims Doyle "denied any problems." Doyle was aware of a repair of a condition of the
house that could have resulted in water damage inside the walls. Although Doyle claims he
disclosed the roof repair, according to Savage's account of their conversation the
communication did not occur. If the seller knew a roof repair had been performed and did
not disclose that fact to the buyer, that is some evidence from which it might be inferred that
the seller was aware that the property had sustained water damage that his work on the roof
corrected and that the seller concealed the water damage. We conclude that the existence of
disputed issues of fact precludes resolution of the deceptive trade practices claim through
summary judgment, notwithstanding the "as is" clause in the contract for deed. Issue two is
sustained.

 The final issue addresses the Savages' claim for fraud in a real estate transaction. 
Appellants contend the motion for summary judgment does not address that claim. The
motion refers to the "claim concerning deceptive trade practices" and does not mention the
claim asserted under Section 27.01, Business and Commerce Code. Appellees argue their
motion for summary judgment asserted the quitclaim deed released all potential claims. We
have found that a fact issue precludes summary judgment on that ground. Issue three is
sustained.

 The judgment of the trial court is reversed, and the cause is remanded for further
proceedings consistent with this opinion.

 REVERSED AND REMANDED.





 _______________________________

 DON BURGESS

 Justice


Submitted on September 2, 2004

Opinion Delivered December 16, 2004


Before McKeithen, C.J., Burgess and Gaultney, JJ.

 CONCURRING AND DISSENTING OPINION



 I concur with the resolution of issue one, but respectfully dissent to the resolution
of issues two and three.

 The contract, prepared by the plaintiff, provided in part as follows:

 5. Buyer has examined the property to Buyer's complete satisfaction and
knows its condition. In purchasing the property, Buyer relies on Buyer's
examination and judgment, not on the representation of any other person as
to the value, future value, condition, size, age, use, or any other matter. 
Buyer acknowledges that in selling the property Seller makes no warrantied
[sic] other than title. This contract is the entire and only agreement between
Buyer and Seller, and it incorporates all other written, verbal, express, and
implied agreements made between any party or any agent of any party to this
contract in connection with this transaction. If any provisions in this
contract conflict with any provisions in any other instrument, those in this
contract shall control. 


There is no evidence of the cause of the water damage, other than the damage caused by
the hot water heater valve which occurred after plaintiff moved into the house. Knowledge
of a roof repair cannot be equated with knowledge of water damage. Plaintiff presented no
evidence of fraud in the inducement of the "as is" agreement. To the contrary, plaintiff
prepared the contract in which he disclaimed reliance on any representation by defendant
concerning the condition of the house. In the absence of any evidence of fraud in the
inducement of the "as is" agreement, this contractual disclaimer negates any claim that 
representation about the condition of the house caused damage to plaintiff. I would
overrule issues two and three and affirm the trial court's judgment.

 _________________________________

 DAVID GAULTNEY

 Justice


Opinion Delivered 

December 16, 2004


CONCURRING AND DISSENTING OPINION


 I concur in the resolution of issues two and three, but respectfully dissent to the
overruling of issue one.

 In their first issue, the appellants contend a material fact issue precludes summary
judgment on the breach of contract claim. The majority is correct when they state: "As the
movants for summary judgment, the appellees must establish as a matter of law that Rocky
Savage released his breach of contract claim when the parties cancelled the contract." I
disagree with the majority's reliance on a rescission case as authority for denying relief in
a suit for breach of contract where the breach occurred prior to cancellation. Absent default
on the part of the buyer, the contract is silent regarding the parties' rights upon cancellation
of the contract for deed. While it would have been necessary to cancel the contract for deed
in order for the Doyles to convey clear title to Hope, it was not necessary for Savage to
release a breach of contract claim against the Doyles in order for the Doyles to implement
the transaction with Hope. I conclude that the quitclaim deed is ambiguous, as it does not
clearly state the grantor's intention to surrender any right other than his claim to title in the
real property, and that no other intent is evident from the context of the transaction. 

 In his affidavit in response to the motion for summary judgment, Rocky Savage avers
he executed the quitclaim deed because the property was being conveyed into Elena's name
and she was not a party to the contract for deed. He further states that the quitclaim deed was
signed for purposes of clearing the title only, and he had no intention of releasing any claims
against the Doyles when he signed the quitclaim deed. I conclude that a fact issue on the
parties' intent precludes summary judgment on the breach of contract claim. I would sustain
issue one and reverse the summary judgment on all claims.

 ________________________________

 STEVE MCKEITHEN

 Chief Justice


Opinion Delivered

December 16, 2004

1. Rocky Savage and Elena Hope Savage allege they are married to each other. The
date of their marriage is a fact issue in this case. In his affidavit, Rocky Savage avers they
were married when he executed the contract for deed. According to Woodrow Doyle's
affidavit, five days after that date, Rocky said he and Elena were not married and were
going to be married in Hawaii. Where we refer to Elena Hope Savage by her maiden
name, we do so for ease of identification and not because we have determined her marital
status at any particular point in time. 
2. In a summary judgment case, the issue on appeal is whether the movants met their
summary judgment burden by establishing that no genuine issue of material fact exists and
that they are entitled to judgment as a matter of law. Tex. R. Civ. P.166a(c). The standards
for reviewing summary judgment are: (1) the movants for summary judgment have the
burden of showing that there is no genuine issue of material fact and that they are entitled to
judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue
precluding summary judgment, evidence favorable to the non-movants will be taken as true;
and (3) every reasonable inference must be indulged in favor of the non-movants and any
doubts resolved in their favor. Nixon v. Mr. Property Management Co., 690 S.W.2d 546,
548-49 (Tex. 1985). 
3. The issue is confined to the effect the execution of the quitclaim deed had upon
the appellants' contract claim, and the merits of the claim for breach of the contract for
deed are not before us. 
4. The plaintiffs' petition on this issue alleges the defendants represented that the
contract for deed conferred or involved rights or remedies it did not have or involve, and
that defendants failed to disclose information concerning the property known to the
defendants at the time of the transaction with the intent to induce the plaintiffs into a
transaction they would not have entered into had the information been disclosed. 
5. The contract for deed provides: 

 Buyer has examined the property to Buyer's complete satisfaction and
knows its condition. In purchasing the property, Buyer relies on Buyer's
examination and judgment, not on the representation of any other person as
to the value, future value, condition, size, age, use, or any other matter.
Buyer acknowledges that in selling the property Seller makes no warrantied
[sic] other than title. This contract is the entire and only agreement between
Buyer and Seller, and it incorporates all other written, verbal, express, and
implied agreements made between any party or any agent of any party to this
contract in connection with this transaction. If any provisions in this
contract conflict with any provisions in any other instrument, those in this
contract shall control.